EXHIBIT 3

## IN THE CIRCUIT COURT FOR FREDERICK COUNTY, MARYLAND

| | | |
|---|---|---|
| **MATTHEW PIERSON**<br>311 Edwards Ferry Road, NE<br>Leesburg, Virginia 20176 | :<br>:<br>: | |
| **Plaintiff** | : | |
| **v.** | : | **Case No.:** _____ |
| **BICI FITNESS, LLC.**<br>**d/b/a GRAN FONDO NATIONAL SERIES**<br>217 North Stratton Street<br>Gettysburg, Pennsylvania 17325 | :<br><br>:<br><br>: | |
| **And** | : | |
| **USA CYCLING, INC.**<br>210 USA Cycling Point, Suite 100<br>Colorado Springs, Colorado 80919<br>**Serve On: Registered Agent**<br>**Shane Garman**<br>210 USA Cycling Point, Suite 100<br>Colorado Springs, Colorado 80919 | :<br><br>:<br><br>:<br><br>: | |
| **Defendants** | | |

## COMPLAINT

### I.    INTRODUCTION

1.  Matthew Pierson, Plaintiff, by and through counsel, Daniel Berke, Michael Reiter, Samuel O. Cole, and **CHASENBOSCOLO** Injury Lawyers, hereby brings this cause of action against Defendants, BICI Fitness, LLC.; and USA Cycling, Inc., for damages resulting from agency, gross negligence, and negligent hiring, training, and supervision. In support thereof, Mr. Pierson states as follows:

### II.    JURISDICTION AND VENUE

2. This Court's subject matter jurisdiction over this action is based on MD. CODE ANN, CTS. & JUD. PROC. § 1-501.

3. This Court's personal jurisdiction in this action is based on MD. CODE ANN, CTS. & JUD. PROC. §6-102 and 6-103.

4. Venue is properly vested in this Court pursuant to MD. CODE ANN, CTS. & JUD. PROC. §6-201(a) and (b).

### III.    PARTIES

5. Plaintiff, Matthew Pierson (hereinafter "Mr. Pierson") is a male resident of the City of Leesburg, in Loudoun County, Virginia.

6. Defendant, BICI Fitness, LLC, doing business as Gran Fondo National Series (hereinafter "Defendant BICI Fitness"), is a corporation that manages, operates and promotes bicycle races, including in the State of Maryland, with a registered office located in Gettysburg, in Adams County, Pennsylvania.

7. Defendant USA Cycling, Inc. (hereinafter "Defendant USA Cycling") is a corporation that organizes and sanctions cycling events throughout the United States, including in the State of Maryland, with a registered office located in Colorado Springs, in El Paso County, Colorado.

### IV.    STATEMENT OF FACTS

8. On September 17, 2023, Mr. Pierson was a competitor in a Gran Fondo National Series championship, a bicycle race that was managed and/or produced by Defendant BICI Fitness, and sanctioned and/or co-managed by Defendant USA Cycling.

9.  At approximately 10:20 AM, Mr. Pierson was operating a bicycle, traveling northbound on Stottlemeyer Road, near the intersection of Stottlemeyer Road and Maryland Route 77, in Sabillasville, Frederick County, Maryland as part of the aforementioned race.

10. The race featured "timed" and "untimed" sections. In the "timed" sections, riders were instructed that the rules of the road did not apply to the racers. The riders were informed that in "untimed" sections, the rules of the road were to be obeyed.

11. Defendant USA Cycling approved and/or sanctioned the Gran Fondo race on September 17, 2023.

12. At the time of the incident, it was the duty of Defendant USA Cycling to ensure that bicycle races would be safe, that the race rules would be followed, and that cyclists would not be struck by motor vehicles.

13. Defendant BICI Fitness organized the Gran Fondo race on September 17, 2023, and Defendant BICI was responsible for managing the race, for ensuring that the race rules would be followed, for hiring, training, and supervising motorcycle officials, and for controlling the racecourse so as to be reasonably safe for competing cyclists, including Mr. Pierson.

14. At the time of the incident, it was the duty of Defendant BICI Fitness to maintain racecourse security, including the placement of course marshals, flaggers, and/or police at all "timed" intersections through which competing cyclists would be crossing.

15. At the time of the incident, Defendant BICI Fitness or its agents were not to control any intersection in the "untimed" portions of the race and that the rules of the road were in place.

16. At the time of the incident, course marshals had been present at approximately the last twenty (20) intersections present on the racecourse creating a "rolling enclosure" with the lead group of riders. The course marshals had controlled motor vehicle traffic and instructed the

riders to pass through traffic signals without stopping, including at the intersections in the "untimed" sections of the race, where the course was not closed, which was in violation of the race rules.

17. At approximately the same time and place, Wanda Deyton was operating a motor vehicle traveling west on Maryland Route 77, near the intersection of Maryland Route 77 and Stottlemeyer Road.

18. As Mr. Pierson was approaching the intersection of Stottlemeyer Road and Maryland Route 77, in an "untimed" portion of the race, a motorcycle official pulled ahead of the riders signaling that the intersection was cleared despite specific instructions not to do so. Based on the officials' actions at the prior 20 intersections, this movement created a clear signal to Mr. Pierson and the other lead rider that the intersection of Maryland Route 77 and Stottlemeyer Road had been cleared for them to ride through without obeying the stop sign.

19. He was obeying the new standard set by the motorcycle officials.

20. The motorcycle official who attempted to clear the intersection not only failed to stop Mr. Pierson and the other cyclist, but he also failed to stop Ms. Deyton.

21. As Mr. Pierson proceeded through the intersection of Stottlemeyer Road and Maryland Route 77 after being signaled by, and at the instruction of, the motorcycle official, Ms. Deyton's motor vehicle struck Mr. Pierson, and the other competing cyclist, at approximately fifty (50) miles per hour.

22. As a direct and proximate result of the crash, Mr. Pierson suffered catastrophic injuries.

23. At the time of the incident, it was the duty of Defendant BICI to enforce and follow the race rules, and to refrain from needlessly endangering the public and competing cyclists, including Mr. Pierson.

24. At the time of the incident, it was the duty of Defendant BICI to deploy a sufficient number of course marshals, flaggers, and/or police stationed at the racecourse intersections to follow the race rules, to control traffic at the "timed" intersections, and to ensure that competing cyclists, including Mr. Pierson, would not be struck by a motor vehicle.

25. At the time of the incident, it was the duty of Defendant BICI to hire qualified course marshals, flaggers, and/or officers, to follow the race rules, to control motor vehicle traffic at the "timed" intersections on the racecourse, and specifically to refrain from attempting to control motor vehicle traffic at the "untimed" intersections on the racecourse.

26. At the time of the incident, it was the duty of Defendant BICI to train course marshals to ensure that the course marshals would follow the race rules, and that the course marshals would not needlessly and recklessly endanger the public and competing cyclists, including Mr. Pierson, with such indifference that it was as if their rights did not exist.

27. At the time of the incident, it was the duty of Defendant BICI to supervise course marshals to ensure that the course marshals were following the race rules, that the course marshals were controlling motor vehicle traffic at the "timed" intersections on the racecourse, that the course marshals were not attempting to control motor vehicle traffic at the "untimed" intersections on the racecourse, that the course marshals were not waving competing cyclists through intersections at the "untimed" portions of the racecourse, and that the course marshals were otherwise acting in a safe manner.

28. Defendant BICI breached these duties by choosing not to deploy a sufficient number of course marshals, flaggers, and/or police to follow the race rules, to control motor vehicle traffic at the "timed" intersections on the racecourse only, to refrain from attempting to control motor vehicle traffic at the "untimed" intersections on the racecourse, to refrain from waving

competing cyclists through intersections at the "untimed" portions of the racecourse,  and to ensure that competing cyclists, including Mr. Pierson, would not be struck by a motor vehicle.

29. Defendant BICI breached these duties by choosing not to hire qualified course marshals, flaggers, and/or officers, to follow the race rules, to control motor vehicle traffic at the 'timed" intersections on the racecourse only, to refrain from attempting to control motor vehicle traffic at the "untimed" intersections on the racecourse intentionally and in direct contravention of race rules, to refrain from waving competing cyclists through intersections at the "untimed" portions of the racecourse, intentionally and in direct contravention of race rules, and to ensure that competing cyclists, including Mr. Pierson, would not be struck by a motor vehicle.

30. Defendant BICI breached these duties by choosing not to train qualified course marshals, flaggers, and/or officers, to ensure that the course marshals would follow the race rules, would control motor vehicle traffic at the "timed" intersections on the racecourse only, would refrain from attempting to control motor vehicle traffic at the "untimed" intersections on the racecourse, would refrain from waving competing cyclists through intersections at the "untimed" portions of the racecourse, and that the course marshals would not needlessly endanger the public and competing cyclists, including Mr. Pierson.

31. Defendant BICI breached these duties by choosing not to supervise course marshals, to ensure that the course marshals were following the race rules, including controlling motor vehicle traffic at the "timed" intersections on the racecourse only, refraining from attempting to control motor vehicle traffic at the "untimed" intersections on the racecourse, refraining from waving competing cyclists through "untimed" intersections on the racecourse, and otherwise acting in a safe manner.

32. Defendant BICI breached these duties when the course marshals intentionally and with indifference to the rights of the cyclists attempted to control traffic in the "untimed" sections of the racecourse, despite the race rules stating that the course marshals were not to do so.

33. Defendant BICI breached these duties when the course marshals intentionally and with indifference to the rights of the cyclists waved competing cyclists, including Mr. Pierson, through intersections in the "untimed" sections of the racecourse, despite the race rules stating that the course marshals were not to do so.

34. Defendant BICI breached these duties when the course marshals intentionally and with indifference to the rights of the cyclists waved competing cyclists, including Mr. Pierson, through the intersection of Stottlemeyer Road and Maryland Route 77, despite the race rules stating that the course marshals were not to do so, and despite Ms. Deyton's vehicle proceeding on Maryland Route 77, through the intersection of Stottlemeyer Road and Maryland Route 77.

35. The actions of Defendant BICI's agents, in waving Mr. Pierson and competing cyclists through an uncontrolled intersection despite the race rules stating that course marshals were not to do so, were made intentionally and with thoughtless disregard of the consequences, and were utterly indifferent to Mr. Pierson's rights.

36. At the time of the incident, it was the duty of Defendant USA Cycling to refrain from needlessly endangering the public, and competing cyclists, including Mr. Pierson.

37. At the time of the incident, it was the duty of Defendant USA Cycling to ensure that the race was safe for the public, and for competing cyclists, including Mr. Pierson.

38. At the time of the incident, it was the duty of Defendant USA Cycling to ensure that Defendant BICI would deploy a sufficient number of course marshals, flaggers, and/or police to follow the race rules,, to control traffic at the "timed" intersections of the racecourse, to refrain

from attempting to control traffic at the "untimed" intersections of the racecourse, to refrain from waving competing cyclists through "untimed" intersections of the racecourse, and to ensure that competing cyclists, including Mr. Pierson, would not be struck by a motor vehicle.

39. At the time of the incident, it was the duty of Defendant USA Cycling to ensure that Defendant BICI would hire qualified course marshals to follow the race rules, to control motor vehicle traffic at the "timed" intersections of the racecourse only, to refrain from attempting to control traffic at the "untimed" intersections of the racecourse, to refrain from waving competing cyclists through "untimed" intersections of the racecourse, to ensure that competing cyclists, including Mr. Pierson, would not be struck by a motor vehicle, and to avoid placing competing cyclists at risk of harm through actions or inactions of the course marshals that violated or contradicted the race rules.

40. At the time of the incident, it was the duty of Defendant USA Cycling to ensure that Defendant BICI would train course marshals to ensure that the course marshals would follow the race rules, would control motor vehicle traffic at the "timed" intersections of the racecourse only, to refrain from attempting to control traffic at the "untimed" intersections of the racecourse, to refrain from waving competing cyclists through "untimed" intersections of the racecourse, to avoid placing competing cyclists at risk of harm through actions or inactions of the course marshals that violated or contradicted the race rules, and to ensure that the course marshals would not needlessly endanger the public and competing cyclists, including Mr. Pierson.

41. At the time of the incident, it was the duty of Defendant USA Cycling to ensure that Defendant BICI would supervise course marshals to ensure that the course marshals were following the race rules, were controlling motor vehicle traffic at the "timed" intersections of the racecourse only, were refraining from attempting to control motor vehicle traffic at the

"untimed" intersections of the racecourse, were refraining from waving competing cyclists through "untimed" intersections of the racecourse, and were otherwise acting in a safe manner.

42. Defendant USA Cycling breached these duties by choosing not to ensure that the course marshals, flaggers, and/or police stationed deployed at the racecourse intersections would follow the race rules, would control motor vehicle traffic at that "timed" intersections only, would not attempt to control motor vehicle traffic at the "untimed" intersections, and would not wave competing cyclists through intersections in the "untimed" sections of the racecourse, and to ensure that competing cyclists, including Mr. Pierson, would not be struck by a motor vehicle.

43. Defendant USA Cycling breached these duties by choosing not to ensure that Defendant BICI would hire qualified course marshals that would follow the race rules, that would control motor vehicle traffic at intersections in the "timed" sections of the racecourse only, that would not attempt to control traffic at "untimed" intersections of the racecourse, and that would not wave competing cyclists through intersections in the "untimed" sections of the racecourse.

44. Defendant USA Cycling breached these duties by choosing not to ensure that Defendant BICI would train course marshals to ensure that the course marshals would follow the race rules, that would refrain from attempting to control traffic at "untimed" intersections of the racecourse, that would not wave competing cyclists through intersections in the "untimed" sections of the racecourse, that would otherwise act in a safe manner, and that would not needlessly endanger the public or competing cyclists, including Mr. Pierson.

45. Defendant USA Cycling breached these duties by choosing not to ensure that Defendant BICI would supervise course marshals to ensure that the course marshals were following the race rules, that the course marshals were controlling motor vehicle traffic at intersections in the "timed" sections of the racecourse only, that the course marshals were not attempting to control

motor vehicle traffic at intersections in the "untimed" sections of the racecourse, that the course marshals were not intentionally and with indifference to the rights of the cyclists waving competing cyclists through intersections in the "untimed" sections of the racecourse, that the course marshals were otherwise acting in a safe manner, and that the course marshals were not needlessly endangering the public or competing cyclists, including Mr. Pierson.

46. The actions of Defendant USA Cycling's agents, in intentionally and with indifference to the rights of the cyclists waving Mr. Pierson and competing cyclists through an uncontrolled intersection despite the race rules stating that course marshals were not to do so, were made with reckless and thoughtless disregard of the consequences, and were utterly indifferent to Mr. Pierson's rights.

47. As a direct and proximate result of the intentional and or reckless and indifferent conduct of the Defendants, Mr. Pierson sustained severe, permanent, and uncompensated harms and losses. These harms and losses include past, present, and future physical symptoms, including immobility and a diminished capacity to perform his activities of daily living and enjoy his daily life. These harms and losses caused Mr. Pierson to expend great sums of money for hospitals, physicians, and related care and treatment. He endured, and continues to struggle with, mental and emotional harms and losses, including isolation, frustration, anxiety, fright, shock, and anguish.

48. Mr. Pierson neither contributed to the violations of the traffic safety rules which caused this collision, nor assumed the risk of the injuries sustained.

## V.    STATEMENT OF CLAIMS

### COUNT I

(Agency: Matthew Pierson v. BICI Fitness, LLC.)

49. Plaintiff, Matthew Pierson, incorporates the facts and allegations of paragraphs one through forty-eight above, and, in addition, avers that Defendant BICI Fitness, LLC. is vicariously liable for its agent's negligent choices, justifying an award of damages against it.

## COUNT II

(Agency: Matthew Pierson v. USA Cycling, Inc.)

50. Plaintiff, Matthew Pierson, incorporates the facts and allegations of paragraphs one through forty-nine above, and, in addition, avers that Defendant USA Cycling, Inc. is vicariously liable for its agent's negligent choices, justifying an award of damages against it.

## COUNT III

(Gross Negligence: Matthew Pierson v. BICI Fitness, LLC.)

51. Plaintiff, Matthew Pierson, incorporates the facts and allegations of paragraphs one through fifty above and, in addition, avers that the choices of Defendant BICI Fitness, LLC. constitute gross negligence, justifying an award of damages against it.

## COUNT IV

(Gross Negligence: Matthew Pierson v. USA Cycling, Inc.)

52. Plaintiff, Matthew Pierson, incorporates the facts and allegations of paragraphs one through fifty-one above and, in addition, avers that the choices of Defendant USA Cycling, Inc. constitute gross negligence, justifying an award of damages against it.

## COUNT V

(Negligent Hiring, Training, and Supervision: Matthew Pierson v. BICI Fitness, LLC.)

53.     Plaintiff, Matthew Pierson, incorporates the facts and allegations of paragraphs one through fifty-two above and, in addition, avers that the choices of Defendant BICI Fitness, LLC. constitute negligent hiring, training, and supervision, justifying an award of damages against it.

## COUNT VI

(Negligent Hiring, Training, and Supervision: Matthew Pierson v. USA Cycling, Inc.)

54.     Plaintiff, Matthew Pierson, incorporates the facts and allegations of paragraphs one through fifty-three above and, in addition, avers that the choices of Defendant USA Cycling, Inc. constitute negligent hiring, training, and supervision, justifying an award of damages against it.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Matthew Pierson, prays for a judgment in his favor against Defendants BICI Fitness, LLC.; and USA Cycling, Inc., jointly and severally, and that damages be allowed in an amount equal to past, present, and future medical expenses; past, present, and future loss of wages; along with past, present, and future pain and suffering, in an amount exceeding SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), plus interest from the date of the subject occurrence, and costs of this suit together with such other and further relief as this Honorable Court deems proper.

## JURY DEMAND

Matthew Pierson demands a trial by jury on all issues presented.

Respectfully Submitted,

**CHASENBOSCOLO** Injury Lawyers

*Daniel Berke*

Daniel Berke, Esq.
Bar No.: 2208170009
7852 Walker Drive, Suite 300
Greenbelt, Maryland 20770
(301) 220-0050
(301) 474-1230 [fax]
dberke@chasenboscolo.com
*Counsel for the Plaintiff*

*Michael D. Reiter*

Michael D. Reiter, Esq.
Bar No.: 1012160059
7852 Walker Drive, Suite 300
Greenbelt, Maryland 20770
(301) 220-0050
(301) 474-1230 [fax]
mreiter@chasenboscolo.com
*Counsel for the Plaintiff*

*Samuel O. Cole*

_____

Samuel O. Cole, Esq.
Bar No.: 1612130108
7852 Walker Drive, Suite 300
Greenbelt, Maryland 20770
(301) 220-0050
(301) 474-1230 [fax]
scole@chasenboscolo.com
*Counsel for the Plaintiff*